IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT DEAS, | ) | 8:15CV35 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| RANDY KOHL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This action was filed by Robert Deas ("Deas"). The court previously granted Deas permission to proceed in forma pauperis in this action. The court now conducts an initial review of the Amended Complaint[1] (Filing No. 9) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

I. BACKGROUND

Deas alleged he is a protective-custody-status inmate at the Tecumseh State Prison ("TSP") in Tecumseh, Nebraska. Liberally construed, he asserts Eighth and Fourteenth Amendment claims against numerous prison officials.

Deas complains both the prison's Clinical Violent Offender Review Team ("CVORT") and the Nebraska Board of Parole recommended that he participate in the prison's "Violence Reduction Program," a program he cannot access from within protective custody at the TSP because it is offered at the Nebraska State Penitentiary. (Filing No. 9 at CM/ECF pp. 2, 8, 20.) He alleges he must sign out of protective custody in order to participate in this program. He complains that, by only offering the program to general-

---

[1] Deas filed his original Complaint (Filing No. 1) on January 26, 2015. He filed the action "on behalf of the inmates of the Tecumseh Department of Corrections in protective Custody Unit 2c." (*Id.* at CM/ECF p. 1.) On April 24, 2015, the court ordered Deas to file an amended complaint that asserted only his legal rights or interests and not the legal rights or interests of third parties. (*See* Filing No. 8.) Deas filed his Amended Complaint (Filing No. 9) on May 26, 2015.

population inmates, prison officials are forcing him to choose between his safety and participation in a program that may increase the likelihood of his parole. (*Id.* at CM/ECF pp. 2-3.)

Deas also alleged four of the named defendants—Defendants Gage, Broadfoot, Holley, and Frakes—were deliberately indifferent to his health and safety during a prison riot that occurred on May 10, 2015. He alleged they "allowed" prison staff to abandon their posts, and also "allow[ed] a[n] exterior door to be opened by central control giving general population full access to the protective custody units." (*Id.* at CM/ECF p. 4.) Upon entering the protective-custody unit, the rioting inmates threatened protective-custody inmates and set two fires. Protective-custody inmates locked themselves in their cells and were forced to breathe smoke from the fires for eight to ten hours. (*Id.*)

Deas seeks declaratory relief and money damages against Defendants in their individual and official capacities. He also seeks prospective injunctive relief in the form of an order requiring prison officials "to allow mandated mental health treatment to [Deas] and others similarly situated." (*Id.* at CM/ECF p. 6.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Deas alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

**III. DISCUSSION**

**A.     Fourteenth Amendment Due Process Claim**

The first question the court will consider is whether Deas sufficiently alleged a due process claim upon which relief may be granted.  "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Thus, Deas must demonstrate that he has been deprived of a liberty interest in order to successfully claim that his Fourteenth Amendment right to due process has been violated.  *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)).  A liberty interest can arise out of the Due Process Clause itself or be state-created.  *Id*. (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

A liberty interest arises under the Due Process Clause when the consequences of the state's actions are "stigmatizing" and "qualitatively different from the punishment characteristically suffered by a person convicted of crime."  *Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)).  An inmate does not have a constitutionally-protected liberty interest in the possibility of parole.  *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Neb. Penal & Corr.*, 442 U.S. 1, 7 (1979)).  Further, an inmate has no liberty interest in the *possibility* of parole if the action was within the original sentence imposed.  As set forth in *Persechini*:

> [T]here is no protected liberty interest, for example, in the sentence reduction that may be granted upon completing a Bureau of Prisons drug treatment program, *Giannini v. Fed. Bureau of Prisons*, 405 Fed. Appx. 96, 97 (8th Cir. 2010) (unpublished); or in halfway-house placement after completing a drug-treatment program, *Staszak v. Romine*, 2000 WL 862836, at *1 (8th Cir.

> June 29, 2000) (unpublished); or in remaining in a work release program, *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996); or in participating in a drug treatment program to qualify for early release, *Koch v. Moore*, 1995 WL 141733, at *1 (8th Cir. April 4, 1995) (unpublished); or in remaining in a discretionary "shock incarceration program," *Klos v. Haskell*, 48 F.3d 81, 88 (2d Cir. 1995); or in participating in Missouri's sex offender treatment program, *Jones v. Moore*, 996 F.2d 943, 945 (8th Cir. 1993).

*Persechini*, 651 F.3d at 807. Put simply, "[t]he general rule" is that "the Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Id.* at 808.

A state-created liberty interest arises when a statute or regulation imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539 (1974). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487. In Nebraska, taking advantage of self-improvement opportunities, such as completion of mental health treatment, is only one among a multitude of factors that the Nebraska Board of Parole considers in determining if a prisoner should be paroled. Neb. Rev. Stat. § 83-1,114(2).

Here, Deas complains both the CVORT and the Nebraska Board of Parole recommended that he participate in the Violence Reduction Program, a program he cannot access as a protective-custody-status inmate. Deas complains that his chance at parole is affected by his inability to access this program. As set forth above, there is no liberty interest in parole, or even the *possibility* of parole, arising from the Due Process Clause itself. There is no indication Defendants have taken any action outside of the sentence originally imposed upon Deas, or that there has been an increase in his original sentence

as a result of Defendants' actions. Therefore, the Due Process Clause itself does not afford Deas any protection.

In addition, Deas cannot demonstrate that he has a state-created liberty interest in parole. He cannot show that he has suffered an atypical or significant hardship as a result of the obstacles he faces in participating in the Violence Reduction Program. For example, he has not been transferred to a markedly more restrictive facility or had a previously-granted right revoked. His only potential hardship is that he may not be paroled, and such a possibility is neither atypical or significant in regular prison life. That is, Deas may simply be required to serve out the remainder of his sentence under the same conditions as other prisoners.

Importantly, Deas also cannot demonstrate that failure to participate in mental health programming will necessarily impact the duration of his sentence. There is no guarantee that Deas will complete the programming, nor does completion of programming mandate Deas's parole under Nebraska law. Additionally, the Nebraska Board of Parole has the discretionary power to examine numerous other factors in determining whether or not parole will be granted.

In short, Deas does not have a liberty interest in being granted access to the mental health programming of his choosing, regardless of its potential impact on his chance at parole. Therefore, Deas's due process claim must be dismissed for failure to state a claim upon which relief may be granted.

**B.    Equal Protection Claim**

The second question the court will consider is whether Deas sufficiently alleged an equal protection claim upon which relief may be granted. The Equal Protection Clause of

the Fourteenth Amendment "prohibits government officials from selectively applying the law in a discriminatory way." *Central Airlines, Inc. v. United States*, 138 F.3d 333, 334-35 (8th Cir. 1998) (citation omitted). It protects "fundamental rights, suspect classifications, and arbitrary and irrational state action." *Brandt v. Davis*, 191 F.3d 887, 893 (8th Cir. 1999) (quotation marks omitted).

Deas alleged that his right to equal protection under the law has been violated because "anger management mental health treatment" is available to three inmates in protective custody at the TSP, but the Violence Reduction Program is not available to him. (Filing No. 9 at CM/ECF p. 3.) Deas alleged that he and these three inmates are "similarly situated" because they are all housed in protective custody at the TSP.

Deas has not alleged he belongs to a suspect classification or has a fundamental right at stake. Thus, he has not stated an equal protection claim upon which relief may be granted. Moreover, to the extent Deas's Amended Complaint could be interpreted as attempting to assert a "class of one" violation, it also fails. Such a claim is allowed where a plaintiff shows he was "intentionally treated differently from others similarly situated and [] there was no rational basis for the difference in treatment." *Flowers v. City of Minneapolis*, 558 F.3d 794, 799 (8th Cir. 2009). According to the materials Deas attached to his Amended Complaint, prison officials informed Deas that he would not be allowed to participate in the anger management treatment being offered to the three inmates because (1) it was not the program the CVORT recommended for him, (2) it was not "equivalent to the [Violence Reduction Program]," and (3) it "could potentially be counter therapeutic." (*Id.* at CM/ECF p. 37.) In addition, the materials Deas attached to his Amended Complaint

7

reflect the Violence Reduction Program is *only* available at the Nebraska State Prison. (*Id.* at CM/ECF pp. 20, 38.) Thus, other than Deas's conclusory allegations, he has not alleged facts to suggest there was no rational basis for the difference in treatment. On the court's own motion, Deas will have 30 days in which to file a second amended complaint that clearly states an equal protection claim against Defendants upon which relief may be granted.

**C.    Eighth Amendment Claim**

The final question the court will consider is whether Deas sufficiently alleged an Eighth Amendment claim upon which relief may be granted. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offense against society." *Id.* at 834 (internal citation omitted). However, prison officials do not incur constitutional liability for every injury suffered by a prisoner. *Id.* A prison official violates the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Under this standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate indifference to the inmate's health or safety. *Id.* at 834.

Deas alleged Defendants Gage, Broadfoot, Holley, and Frakes were deliberately indifferent to his health and safety on May 10, 2015, during a prison riot. However, he did not allege facts to suggest that any of these individuals knew of a substantial risk of serious harm to Deas and they disregarded that risk by failing to take reasonable measures to

8

abate it.  If Deas elects to file a second amended complaint, he must allege facts demonstrating how each of the defendant's actions rose to the level of "deliberate indifference" to his health and safety.  In other words, he must allege that the defendants knew he was at risk of being attacked and explain how the defendants' response to this threat of attack was unreasonable. Accordingly,

IT IS ORDERED:

1. Deas will have 30 days in which to file a second amended complaint in accordance with this order.  Failure to file a second amended complaint within 30 days will result in the court dismissing this action without further notice.

2. The clerk of the court is directed to set the followings pro se case management deadline: August 28, 2015: check for second amended complaint; dismiss if none filed.

3. **To avoid confusion, any document Deas sends to the clerk of the court for filing in this case must clearly display the case number.**

DATED this 29th day of July, 2015.

                BY THE COURT:

                s/Laurie Smith Camp
                Chief United States District Judge